IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| 3473 DEVELOPMENT CORPORATION AND CULINARY CONSULTANTS, INC., d/b/a BERMUDA BAR, | : : : : | |
| | : | CIVIL ACTION FILE NO. |
| Plaintiffs, | : : | |
| NOTTING HILL, INC., AND ATLANTA KOREAN-AMERICAN BUSINESS ASSOCIATION, GWINNETT COUNTY, GEORGE KIM, AND JOHN DOES, GWINNETT COUNTY, GEORGIA; THE BOARD OF COMMISSIONERS OF GWINNETT COUNTY, GEORGIA; NICOLE L. HENDRICKSON; KIRKLAND D. CARDEN; BEN KU; JASPER WATKINS, III; MARLENE M. FOSQUE; individually and in their official capacities as Commissioners of Gwinnett County, Georgia | : : : : : : : : : : : : : : : : : | |
| Defendants. | : | |

COMPLAINT FOR CONSTITUTIONAL VIOLATIONS, VIOLATIONS OF 42 §
U.S.C. 1983, AND TORTIOUS INTERFERENCE WITH
CONTRACTUAL AND BUSINESS RELATIONS AND OTHER RELIEF

COMES NOW 3473 Development Corporation and Culinary Consultants,

Inc., d/b/a Bermuda Bar, and after naming themselves as Plaintiffs in the above

1

referenced matter, file and submit this Complaint For Constitutional Violations, Violations of 42 § U.S.C. 1983 and Tortious Interference With Contractual And Business Relations against Defendants, Gwinnett County, Gwinnett County Commissioners, Notting Hill, Inc., and Atlanta Korean-American Business Association, Inc., George Kim, and John Does, respectfully showing as follows:

PARTIES/ JURISDICTION AND VENUE:

1.      Plaintiffs are Georgia corporations, licensed and authorized to do business in the State of Georgia.

2.      Defendant, Gwinnett County, Georgia ("Gwinnett County") is a political subdivision of the State of Georgia and a body corporate and politic pursuant to Art. 9, § 1, ¶ 1 of the Georgia Constitution.  Defendant, Gwinnett County, Georgia, may be served through its Chairwoman, Nicole L. Hendrickson, at the Gwinnett County Administration Building, 5150 Sugarloaf Parkway, Lawrenceville, Georgia 30043.  Defendant, Gwinnett County, is therefore subject to the jurisdiction and venue of this Court.

3.      Defendant, The Board of Commissioners of Gwinnett County, Georgia ("Board of Commissioners") is the governing authority of Gwinnett County with such powers as are vested in it pursuant to the laws of the State of Georgia.  The

Board of Commissioners has the legislative power to adopt clearly reasonable ordinances, resolutions, and regulations relating to the property and affairs of Gwinnett County. Defendant, The Board of Commissioners, may be served through its Nicole L. Hendrickson, at the Gwinnett County Administration Building, 5150 Sugarloaf Parkway, Lawrenceville, Georgia 30043. Defendant, Board of Commissioners, is therefore subject to the jurisdiction and venue of this Court.

4. Defendant, Nicole L. Hendrickson, is a member of the Gwinnett County Board of Commissioners, a resident of Gwinnett County, Georgia, and may be served with process at her office address at the Gwinnett County Administration Building, 5150 Sugarloaf Parkway, Lawrenceville, Georgia 30043. Defendant, Nicole L. Hendrickson, is therefore subject to the jurisdiction and venue of this Court.

5. Defendant, Kirkland D. Carden, is a member of the Gwinnett County Board of Commissioners, a resident of Gwinnett County, Georgia, and may be served with process at his office address at the Gwinnett County Administration Building, 5150 Sugarloaf Parkway, Lawrenceville, Georgia 30043. Defendant, Kirkland D. Carden, is therefore subject to the jurisdiction and venue of this Court.

6. Defendant, Ben Ku, is a member of the Gwinnett County Board of Commissioners, a resident of Gwinnett County, Georgia, and may be served with process at his office address at the Gwinnett County Administration Building, 5150 Sugarloaf Parkway, Lawrenceville, Georgia 30043. Defendant, Ben Ku, is therefore subject to the jurisdiction and venue of this Court.

7. Defendant, Jasper Watkins, III, is a member of the Gwinnett County Board of Commissioners, a resident of Gwinnett County, Georgia, and may be served with process at his office address at the Gwinnett County Administration Building, 5150 Sugarloaf Parkway, Lawrenceville, Georgia 30043. Defendant, Jasper Watkins, III, is therefore subject to the jurisdiction and venue of this Court.

8. Defendant, Marlene M. Fosque, is a member of the Gwinnett County Board of Commissioners, a resident of Gwinnett County, Georgia, and may be served with process at his office address at the Gwinnett County Administration Building, 5150 Sugarloaf Parkway, Lawrenceville, Georgia 30043. Defendant, Marlene M. Fosque, is therefore subject to the jurisdiction and venue of this Court.

9. Defendant Notting Hill, Inc. is a corporation licensed to do business in the state of Georgia. Defendant may be served by delivering Second Original of Summons and Complaint to its CFO, CEO Registered Agent, Bennett Jaewook

Lee, at its Principal Office Address, 125 Spalding Trace, Sandy Springs, Fulton County, Georgia. Defendant transacts business and upon information and belief maintains an office in Gwinnett County. Further Defendant has executed a contract with Plaintiff, 3473 Development Corporation, for performance in Gwinnett County and has committed tortious acts against Plaintiffs, described below, in Gwinnett County. Said Defendant is also a joint tortfeasor with Co-Defendant, Atlanta Korean-American Business Association, Inc. Said Defendant is subject to the jurisdiction and venue of this Court for purposes of this action.

10. The Korean American Restaurant Association is a business association of unknown structure and origin, composed in part, of owners and operators or Korean retail establishments that are located in the shopping plaza located at 3473 Old Norcross Road, Duluth, Gwinnett County Georgia. It is subject to the jurisdiction and venue of this Court for the purpose of this action.

11. George Kim is the Owner of The Honey Pig and representative of the Korean American Restaurant Association. The Honey Pig is located in the shopping plaza located at 3473 Old Norcross Road, Duluth, Gwinnett County Georgia. It is subject to the jurisdiction and venue of this Court for the purpose of this action.

12. Subject Matter Jurisdiction exists under 28 U.S.C. Section 1331.

13.   Venue is proper in this Court pursuant to 28 U.S. C. Section 1391 (b)(1)(2).

FACTS:

14.   In approximately 2005, the strip mall and shopping plaza, located at 3475 Old Norcross Road, Duluth, Georgia ("Plaza"), was developed adjacent to a residential neighborhood that was and continues to be inhabited primarily by persons of Korean heritage.  Throughout the course of operation and development of the Plaza, the primary tenants of the Plaza have been businesses owned/operated by Korean Americans and catering to the Korean/American community.  In fact, on "google earth" the surrounding area is termed "Little Korea."

15.   Suite 100 at the Plaza, comprising the largest single space therein by square footage, was operated by Plaintiffs as a full-service live entertainment restaurant, offering on premises consumption and sale of food, alcohol, live and recorded music and entertainment (the "Restaurant").  Such operation was undertaken following execution of Lease between 3473 Development Corporation, as tenant, and Notting Hill, Inc., as Landlord, dated September 17, 2021.

16.   The live and recorded music and entertainment offered by the Plaintiffs, commencing in 2017, was in fact consistent with that previously furnished by prior

tenants at this suite. As with respect to previous tenants of Suite 100, the Restaurant, through its musical and food offerings, catered primarily to middle-aged African-Americans, including college educated professionals, first responders, technicians, sales representatives, nurses, teachers. This was fully known to Landlord prior to, at and at all times since execution of the Lease and throughout the operation of the Restaurant.

17.    The live and recorded music and entertainment offered by Plaintiff at its facility is consistent and not at variance with that previously and presently being furnished by other restaurants, Restaurants, and bars in Gwinnett County, Georgia.

18.    As part of and essential to the successful operation of its business, Plaintiff, applied for and received all licenses and permits incident to operation of its business.

19.    In reliance upon existing state laws and applicable Gwinnett County ordinances, Plaintiff has entered into lease agreements, mortgages, and other long time financial obligations. Plaintiff has applied for and obtained the proper and necessary alcohol, tobacco, and business licenses to conduct a restaurant, including live and recorded music at its facility.

20.    The Korean American Restaurant Association ("KARA") was formed for the purpose of promoting the business, cultural and political interests of Korean

7

American restaurant and bar owners.  Over time, KARA has utilized its resources to promote exclusivity and segregation by enlisting legislative, law and code enforcement elements of Gwinnett County government to maintain segregated business areas.  This has involved utilizing its resources and influence to solicit and procure selective enforcement of vague and ambiguous Municipal codes and ordinances with the purpose and effect of damaging African American business owners, in particular owners of various businesses located over time in suite 100 of the Plaza, while excluding from enforcement  and offending Korean American owned businesses.

21.    KARA and its members have pressured and intimidated Defendant Notting Hill and its predecessors to restrict parking for patrons of Suite 100 by, for example, requiring all African- American patrons of the Restaurant to turn left and to pay valet to park their vehicles, while simultaneously allowing KARA members and their patrons to have complimentary parking. Subsequently, Notting Hill divided the complimentary parking in half between Suite 100 and the smaller Plaza tenants and used tow trucks armed security guards to intimidate regular and law-abiding customers of the Restaurant.

22.    KARA and its members have instigated the making of false complaints of noise ordinance violations against Plaintiffs, thus requiring police and municipal

8

officers to interfere with safe and normal operations of the Restaurant, including live and recorded music, tailored to the African American community.  KARA has exploited vague, ambiguous and overbroad noise ordinances as part of a repeated and malicious effort to stop Plaintiffs' business and to scare off Plaintiffs' customers, consisting largely of middle-aged, professional African Americans seeking to enjoy sophisticated musical entertainment and offerings at Plaintiffs' Restaurant.

23.    For example, over the last approximately 10 years, a single individual residing in a subdivision proximate to the Restaurant, has been induced to make sustained and repeated noise complaints against the Restaurant with the police. Recently, African American police officers have informed Plaintiff and others that they in fact observed no excessive noise emanating from the Restaurant but were required to issue citations to Plaintiffs whether or not they had heard excessive noise warranting such citation.

24.    KARA and its members manipulate code enforcement officers to cite and to issue warnings to Plaintiff regarding noise emanating from the Restaurant, while granting exceptions to Korean owned businesses for the exact same code violations.

25.    KARA and its members and Notting Hill have worked together to grant

exceptions to KARA member tenants of the Plaza; for example, allowing them to have approximately 9 shipping containers illegally parked in the Plaza, blocking 15 parking spaces in the rear of the Plaza, while demanding that Plaintiffs remove its one (1) small storage unit. This is part of an effort to utilize and manipulate police and municipal authorities to curtail Plaintiffs' business in favor of Korean owned businesses.

26.    KARA has caused the reporting and subsequent investigation of false accusations of illegal drug consumption at Plaintiffs' facility. This includes false reports of marijuana possession and consumption.

27.    At a recent meeting at Plaintiffs' premises attended by a high-ranking police official, Notting Hill representatives, KARA members and Plaintiff, ostensibly to discuss parking issues, KARA member presented a bag of cocaine or similarly appearing substance, stating to the officer that it had been found on the common area outside Suite 100. This was part of a carefully orchestrated attempt to defame Plaintiffs and to instigate enhanced police presence at the Restaurant, with the intent of scaring off its customer base. Upon information and belief, no action was taken by the police official against the person presenting the controlled substance to the police officer at the meeting. Contrary to what Plaintiffs understand and believe is required practice, the proffered substance was not placed in an evidence

bag or "tagged" with the name of the potential offender along with time, date and location of incident; nor was the substance tested to determine whether it was in fact a controlled substance. Accordingly, the meeting was, in fact, a ruse and fabrication, designed not to address legitimate parking concerns, but to cause increased police presence, all in an effort to damage Plaintiffs' legitimate business.

28. Plaintiffs, by information and belief, have learned that the exact same tactic of levying false claims of illegal drug activity and noise has been used by KARA against the previous tenants in the suite, ENCORE, including, but not limited to the presentation of a white substance alleged to be cocaine to police officers.

29. Plaintiffs do not and have never tolerated the presence of any illegal activity, including illegal drug consumption at their Restaurant. Nevertheless, the foregoing evidence a long history and pattern by KARA and Korean owned businesses in the Plaza to defame Plaintiffs and to attack and to destroy its business because it is owned, operated and catered to the African American community.

30. Additionally, the County has been complicit with and allowed the remaining Defendants to induce them to seek enforcement actions, including but not limited to noise code violations, against Plaintiffs that are rarely enforced in the jurisdiction and that they knew or should have known were direct violations of Plaintiffs' Freedom of Speech and other Constitutional Rights.

11

ADOPTION OF "NOISE CONTROL" ORDINANCE

31.    On or about May 18, 2021, Defendant, Gwinnett County, repealed the former Article III, § § 38-44 - 38-50 and enacted a new Article III of Chapter 38 entitled "Noise Control."

32.    A certified copy of the referenced sections of the Gwinnett County Code of Ordinances, entitled "Noise Control" is attached hereto as Exhibit "A" (the "Noise").

ADOPTION OF SECTION 6-36 OF THE ALCOHOL CODE

33.    Defendant, Gwinnett County, has enacted Section 6-36 of the Gwinnett County Code of Ordinances, entitled "Noise From Establishments Prohibited."

34.    A certified copy of the referenced Section 6-36 of the Gwinnett County Code of Ordinances is attached hereto as Exhibit "B" (the "Alcohol Code").

NEFARIOUS COUNTY ACTIONS

35.    County police officers have repeatedly come into the establishment, guns drawn, intentionally scaring patrons, to allegedly enforce a simple alleged code violation.

36.    Code enforcement has cited Plaintiff for violations while ignoring and excusing the same by Korean owned businesses.

37.    County officials went out of their way to apply the arcane alcohol code to

the sounds emanating from the building after realizing that there was no violation of the noise ordinances and that the sounds emanating from the building measure at ambient noise levels.

FINANCIAL LOSS OF PLAINTIFFS

38.    Due to the harassment by the Defendants, acting collectively and severally, the illegal application of the noise ordinances, the restriction of parking and numerous other actions taken to systematically destroy The Bermuda Bar, Plaintiffs have been forced to shut the doors of their establishment causing the loss of well over $3,000,000 (Three Million Dollars.)

COUNT I: TORTIOUS INTERFERENCE BY ALL NON-GOVERNMENTAL

DEFENDANTS

39.    Plaintiffs incorporate and reallege Paragraphs 1-38 of their Complaint as if fully set forth herein verbatim.

40.    Defendants have conspired to tortiously and maliciously interfere with Plaintiffs' business by the foregoing methods and in particular, through the reporting of false and baseless complaints of noise violations; through selective deprivation of essential parking space; through baseless accusations of criminal activity; through intimidation, coercion and threats upon its customer base.

41.    Plaintiffs have suffered damage and in fact been forced to close its

business as a result of Defendants' tortious and malicious attacks upon Plaintiffs.

42.    Defendants are liable jointly and severally for actual damages including loss of investment; loss of profit; and for punitive damages as a result of their willful, wanton and contumacious actions, in an amount to be established in the enlightened conscience of an impartial jury.

COUNT II: DEFAMATION BY ALL NON-GOVERNMENTAL DEFENDANTS

43.    Plaintiffs incorporate and reallege Paragraphs 1-38 of their Complaint as if fully set forth herein verbatim.

44.    Defendants through their publication and dissemination of charges of illegal activity or condonation of such activity at Plaintiffs' premises, have defamed Plaintiffs and served to destroy Plaintiffs' outstanding reputation in the metropolitan Atlanta Restaurant and entertainment community.

45.    Such accusations were made for the express and specific purpose of defaming Plaintiffs and are actionable without proof special damage under Georgia law.

46.    Defendants are liable, jointly and severally, for punitive damages as a result of their campaign to defame and to destroy Plaintiffs' reputation, in an amount to be established in the enlightened conscience of an impartial jury.

## COUNT III: CONTRACTUAL OBLIGATIONS BY DEFENDANT NOTTING HILL

47.    Plaintiffs incorporate and reallege Paragraphs 1-38 of their Complaint as if fully set forth herein verbatim.

48.    Defendant Notting Hill assumed a duty to provide Plaintiffs quiet enjoyment of Suite 100 to Plaintiffs.

49.    Defendant breached its duty to provide quiet enjoyment of Suite 100 to the Plaintiffs.

50.    As a direct and proximate result of Defendant's conduct, Plaintiffs have sustained economic damages.

51.    Defendant's breach of duty to Plaintiffs have been malicious, wanton, and willful entitling Plaintiffs to recover punitive damages in an amount to be established in the enlightened conscience of an impartial jury.

## COUNT IV: CONSTRUCTUAL VIOLATIONS BY GWINNETT COUNTY AND GWINNETT COUNTY COMMISSIONERS

52.    Plaintiff alleges that the Noise Code and the Alcohol Code (collectively the "Codes") and each of their respective provisions on their face and as applied, violate the Georgia Constitution in the following particulars:

a)    The Codes were improperly enacted because of improper procedural violations.  Said procedural violations violate Art. 1, § 1, ¶ 1 of the Georgia Constitution (Due Process) and the Due Process Clause of The United States Constitution;

b)    The Codes violate due process because they contain insufficient amortization for the recoupment of business investments;

c)    The Codes violate due process because there is no logical correlation between the prohibitions in the Sections and any legally cognizable threat to the health, safety, and welfare of the resident of Gwinnett County, Georgia;

d)    The Codes violate due process because they are arbitrary and capricious;

e)    The Alcohol Code violates due process because it contains no specific decibel levels apprising Plaintiff and other similarly situated businesses of the noise volume above which they are subject to sanction from the State; and no opportunity to conform their businesses to the requirements of law;

(f)    The Alcohol Ordinance violates due process because it purports to criminalize sound otherwise permissible as ambient noise, without a rational relationship to a legitimate government purpose;

(g)    The Codes violate due process because it makes illegal what was legal

16

under earlier law; and constitutes taking of property without just compensation;

(h)     The Codes are unconstitutionally vague;

(i)     The Codes constitute inverse condemnation which is violative of Eminent Domain;

(j)     The Codes violate equal protection because they deprive Plaintiff of the protection of its property for a lawful business purpose;

(k)     The Codes violate equal protection because they purport to criminalize music emanating from a commercial establishment at a particular level while rendering permissible other forms of sound, including ambient sound emanating from other sources at an equal or greater level;

(l)     The Codes violate equal protection because they are vague and capable of subject enforcement based in whole or in part on the content of the music subject to sanction or punitive action by the State pursuant to such Codes;

(m)     The Ordinances violate equal protection of the laws as applied because they enable and are in fact enforced predominantly against African-American owned businesses catering to an African-American clientele;

(n)     As applied against Plaintiff, the Codes have been enforced selectively against Plaintiff because it is an African-American owned business featuring music and entertainment popular with the African-American community.

17

(o)     The Codes violate Art. 1, § 1, ¶ 10 (Law Impairing Obligation of Contract) of the Georgia Constitution because they impair Plaintiff's obligations under contracts; and

(p)     The Codes violate Art. 1, § 3, ¶ 1 of the Georgia Constitution (Eminent Domain) because they constitute a taking of Plaintiff's property neither for a public purpose nor with just or adequate compensation first being paid.

53.    The Plaintiff's facility, including provision of on-premises live and recorded music and entertainment should be considered "grand-fathered" and therefore authorized and permitted even assuming the validity of the Noise Code.

## COUNT V: FIRST AMENDMENT VIOLATION BY GWINNETT COUNTY AND GWINNETT COUNTY COMMISSONERS

54.    The music emanating    from Plaintiff's establishment constitutes speech, protected under the First Amendment of the United States Constitution and the Georgia Constitution.

55.    The Codes violate the First Amendment of the United States Constitution and the Georgia Constitution by impermissibly restricting speech.

56.    The Codes are subject to strict scrutiny because they purport to limit

protected speech. The Codes, however, are not narrowly tailored or the least restrictive means of achieving a compelling governmental interest.

57.    The Codes violate the First Amendment of the United States Constitution and the Georgia Constitution, on their face and as applied because they are being used predominantly to penalize African-American businesses catering to an African-American clientele.

58.    The Codes violate the First Amendment of the United States Constitution and the Georgia Constitution on their fact and as applied because each enables and is being enforced for the purpose or with the effect of inhibiting the peaceable assembly of citizens and residents of Gwinnett County, Georgia.

## COUNT VI: THE ALCOHOL CODE AND NOISE CODE CONFLICT WITH EACH OTHER

59.    The Alcohol Code and Noise Code conflict with one another, depriving Plaintiff and other similarly situated businesses of the capacity to conform their businesses to the requirements of law, thus warranting immediate injunctive relief, prohibiting further enforcement of the Codes.

## COUNT VII: DECLARATORY JUDGMENT

60.    Plaintiff realleges each and every fact set forth in paragraphs 1-38 of this Petition and incorporate them herein by reference.

61.    There is a substantial and actual controversy over Plaintiff's rights to due process and equal protections pursuant to the United States Constitution and the Constitution of the State of Georgia (Art. 1, § 1, ¶ 1 and Art. 1, § 1, ¶ 2), as these rights will be affected by the enforcement of such action, entitling Plaintiff to a declaratory judgment as to whether the Noise and Alcohol Ordinances are unconstitutional per se and as applied to Plaintiffs.

COUNT  VIII:  DEPRIVATION  OF  CONSTITUTIONAL  CIVIL  RIGHTS DAMAGES

62.    Plaintiff realleges each and every fact set forth in paragraphs 1-38 of this Petition and incorporate them herein by reference.

63.    Defendants have acted under color of State law which has resulted in the deprivation of rights, privileges, and immunities secured by the 1st and 14th Amendments of the United States Constitution and the Georgia Constitution.

64.    As a direct and proximate result of the willful enactment and the non-grandfathering application of its unconstitutional ordinances; and Defendants' improper motives for its enactment; Plaintiff suffers and continues to suffer irrevocable harm, and damage and destruction of its business and financial obligations.

65.    The facts and allegations contained in the Petition constitute a deprivation of

Plaintiff's rights under the United States Constitution and the Georgia Constitution for which redress is authorized.

66.    The actions of Defendants deprive and continue to deprive the Plaintiff of its property without just compensation in violation of The First and Fourteenth Amendment of the Constitution and Art. 1, § 3, ¶ 1 of the Constitution of the State of Georgia.  The actions of the Defendants constitute a *de facto* condemnation of said property entitling Plaintiff to the full value of its business.


COUNT IX: INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONS

BY THE COUNTY AND COMMISSIONERS

67.    Plaintiff realleges each and every fact set forth in paragraphs 1-38 of this Petition and incorporate them herein by reference.

68.    Under its lawfully obtained Licenses, Plaintiff has operated and maintained a restaurant with on-premises live and recorded music and entertainment.

69.    The live and recorded music and entertainment offered at Plaintiff's facility constitutes an integral and essential component of its business.

70.    Under the Codes, as written and as currently enforced, Plaintiff would be required to terminate the provision of live and recorded music and entertainment at its facility.

21

71.     Plaintiff has a property right in its business and is entitled to protection from tortious interference.

72.     Defendants have interfered and continue to interfere with Plaintiff's business without privilege or authority of law, and with purposeful and malicious intent to injure, causing Plaintiff financial injury in an amount to be proven at trial.

73.     The actions of Defendants are directed at the intentional and willful destruction of Plaintiff's business, constituting the tort of intentional interference with business relations, contrary to the laws of the State of Georgia, entitling Plaintiff to compensatory damages in an amount to be proven at trial.

## COUNT X: INDIVIDUAL LIABILITY OF DEFENDANT BOARD OF COMMISSION MEMBERS

74.     Plaintiff realleges each and every fact set forth in paragraphs 1-38 of this Petition and incorporate them herein by reference.

75.     The actions of the individually named Defendants were and continue to be done oppressively, maliciously, and outside the scope of legislative authority, in violation of O.C.G.A. § 36-33-4, rendering such individual Defendants liable for the consequences of their actions.

76.     The actions of individually named Defendants violate the Civil Rights of Plaintiff.

77.   The actions of the individually named Defendants in trampling upon Plaintiff's Constitutional Rights were willful and malicious, entitling Plaintiff to punitive damages.

COUNT XI: 42 U.S.C. §1983

78.   Plaintiff realleges each and every fact set forth in paragraphs 1-38 of this Petition and incorporate them herein by reference.

79.   County Defendants enforced patently unconstitutional ordinances in violation of Plaintiff's 1st amendment rights.

80.   County Defendants, while acting under the color of law, violated Plaintiff's constitutional rights by repeatedly citing them with noise violations for playing music which is protected speech, at the behest of and in collusion with the Korean business owners in the strip mall, to drive Plaintiff out of business.

81.   The Plaintiffs were engaged in protected speech as the Courts have determined that music is speech as contemplated by the United States Constitution and the Georgia Constitution.

82.   Defendant's actions were not taken in good faith as there were no complainants in proximity of the establishment, an independent sound test showed the sound was equal to that of ambient noise, and many officers stated they were instructed to cite Plaintiffs regardless of what they did or did not "hear".

23

83.  Defendant's actions were unnecessary, unreasonable, unlawful and unjustified.

84.  As a direct and proximate result of County Defendant's actions, Plaintiffs were forced out of business, patrons were harassed and treated differently than other non-African-American patrons of adjoining businesses. Plaintiffs suffered and continues to suffer substantial past and future damages, both compensatory and general, including but not limited to, loss of income and damage to business reputation.

85.  Because County Defendant's actions through the police department and code enforcement were motivated by evil motive or in tent and or involved a reckless or callous indifference to the protected rights of Plaintiff, an award of punitive damages is appropriat4e to the fullest extent permitted by law.

## COUNT XII: ATTORNEY'S FEES

86. Plaintiff realleges each and every fact set forth in paragraphs 1-83 of this Petition and incorporate them herein by reference.

87. The actions of Defendants in adopting and enforcing patently unconstitutional ordinances are willful, stubborn, and litigious, entitling Plaintiff to its reasonable attorney's fees in an amount to be determined at trial.

Wherefore, Plaintiffs respectfully pray that:

24

A.    That summons and process issue as provided by law requiring Defendant to appear and answer the Complaint.

B.    That service be had upon said Defendant in a manner provided by Georgia law.

C.    That Plaintiffs recover damages as provided by law.

D.    That Plaintiffs recover punitive damages, attorney's fees, and all costs of this action.

E.    That Plaintiffs recover prejudgment interest on any damages awarded Plaintiffs.

F.    That this Court grant such other and further relief as it deems just and appropriate in these premises.

Respectfully submitted this 9th day of October, 2024.

/s/Kenneth I. Sokolov
GA Bar #:666460

Five Concourse Parkway
Suite 2600
Atlanta, Georgia 30328
404.760.6005  Tel.
404.760.0225  Fax
ksokolov@smithliss.com

Attorneys For Plaintiffs:
3473 Development Corporation
and Culinary Consultants, Inc.,
d/b/BermudaBar

25

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing document has been prepared in Times New Roman (14 point) and fully complies with the font and point selection requirements of LR 5.1(B), NAGA.

/s/Kenneth I. Sokolov
GA Bar #:666460

Five Concourse Parkway
Suite 2600
Atlanta, Georgia 30328
404.760.6005  Tel.
404.760.0225  Fax
ksokolov@smithliss.com

Attorneys For Plaintiffs:
3473 Development Corporation
and Culinary Consultants, Inc.,
d/b/a
BermudaBar

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send an e-mail notification of such filing to all attorneys of record.

/s/Kenneth I. Sokolov
GA Bar #:666460

Five Concourse Parkway
Suite 2600
Atlanta, Georgia 30328

404.760.6005  Tel.
404.760.0225  Fax
ksokolov@smithliss.com

Attorneys For Plaintiffs:
3473 Development Corporation
and Culinary Consultants, Inc.,
d/b/a
BermudaBar